**Nos. 25-3030, 25-3034, 25-3293**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

*Defendants-Appellants.*

(full caption on inside cover)

————————————

On Appeal from the United States District Court
for the Northern District of California

————————————

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

*Petitioner.*

(full caption on inside cover)

————————————

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

————————————

### SUPPLEMENTAL EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
### FOR STAY PENDING APPEAL/PETITION FOR WRIT OF MANDAMUS

————————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
  *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

No. 25-3030, 25-3293

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 521; SEIU LOCAL 1000; SEIU LOCAL 1021; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of the U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity as the actual head of the Department of Government Efficiency*; AMY GLEASON, *in her official capacity as the titular Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; PEACE CORPS; ALLISON GREENE, *in her official capacity as Chief Executive Officer of the Peace Corps*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and FRANK BISIGNANO,[*] *in his official capacity as Commissioner of the U.S. Social Security Administration*,

*Defendants-Appellants.*

---

[*] Frank Bisignano has been automatically substituted for his predecessor. *See* Fed. R. App. P. 43(c)(2).

No. 25-3034

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as the Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY*, in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and FRANK BISIGNANO,† *in his official capacity as Commissioner of the U.S. Social Security Administration*,
*Petitioners-Defendants*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,
*Real Parties in Interest-Plaintiffs.*

---

† Frank Bisignano has been automatically substituted for his predecessor. *See* Fed. R. App. P. 43(c)(2).

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT................................................ 1

STATEMENT................................................................................................................ 2

    A.    Statutory and Regulatory Background ......................................................... 2

    B.    Factual Background......................................................................................... 4

ARGUMENT................................................................................................................. 7

I.    This Court should stay the grant of injunctive relief..................................... 8

    A.    The government is likely to succeed on the merits.................................... 8

        1.    Plaintiffs' claims are not justiciable in district court. ...................... 8

        2.    Plaintiffs' challenges to the Executive Order are meritless. ......... 12

        3.    Plaintiffs' challenges to the Memorandum are meritless. ............ 17

    C.    The other stay factors strongly favor the government. ........................... 18

II.    This Court should stay the district court's discovery order................................ 20

    A.    The district court failed to justify its order.................................................. 21

    B.    Public disclosure of sensitive documents would irreparably harm the government. ................................................................................................. 22

CONCLUSION .......................................................................................................... 24

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government submits this supplemental emergency motion for a stay following the district court's entry of a preliminary injunction last night.

The injunction prevents about 20 federal agencies from carrying out an Executive Order directing them to undertake preparations for reductions in force (RIFs) consistent with applicable law. The court further ordered the government to publicly produce highly sensitive records that document the agencies' deliberations about how they might implement the President's directive, without conducting *any* of the analysis required to determine whether the deliberative process privilege has been overcome.[1] This Court should stay these orders pending appeal.

At the threshold, plaintiffs' claims are not justiciable in district court. Congress has channeled federal-employment disputes of this type to a comprehensive review scheme, and, in any event, plaintiffs identify no reviewable final agency action. On the merits, the injunction rests on a fundamentally flawed understanding of the separation of powers. Congress authorized agencies to conduct RIFs, and the President may tell agencies to use their statutory authorities to accomplish policy goals. No statutory text supports the court's suggestion that agencies may not conduct RIFs at large scale, and plaintiffs' speculation that agencies may violate their organic statutes in reducing their workforces provides no basis for the injunction.

---

[1] The district court has since administratively stayed the production order pending consideration of the government's motion for a protective order.

The harms to the Executive Branch are apparent from the court's order, which halts nearly every executive department from taking steps to implement the President's policy priorities.  To correct these errors and prevent further irreparable harm, this Court should grant a stay.  The government respectfully requests that this Court act on this motion by May 30.

## STATEMENT

### A.      Statutory and Regulatory Background

**1**.  The Office of Management and Budget (OMB) is a component of the Executive Office of the President (EOP) that assists the President in preparing the budget and overseeing agencies.  *See* 31 U.S.C. §§ 501-503.  The Office of Personnel Management (OPM) is an independent establishment in the Executive Branch that assists the President in overseeing the federal workforce.  *See* 5 U.S.C. §§ 1101-1104.  The U.S. DOGE Service (USDS) is an entity in EOP created to help advise and consult on the President's agenda of "modernizing federal technology and software to maximize governmental efficiency and productivity."  Executive Order 14158, 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025).

**2**.  Federal law recognizes that the government may conduct RIFs, an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions."  *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *see* 5 U.S.C. § 3502.  OPM has promulgated regulations

specifying requirements for RIFs, under which "OPM may examine an agency's preparations for [RIFs] at any stage." 5 C.F.R. § 351.205.

Agencies' authority to conduct RIFs predates the modern civil service. *See* Act of Aug. 15, 1876, 19 Stat. 143, 169; *see generally Hilton v. Sullivan*, 334 U.S. 323, 336-39 (1948). Courts have recognized the government's broad discretion to decide which employees to retain or separate. *See, e.g., Keim v. United States*, 177 U.S. 290, 295 (1900). And the President has often set priorities for federal agencies *resulting* in RIFs. *See, e.g.,* Executive Order 12839, 58 Fed. Reg. 8515, 8515 (Feb. 10, 1993) (directing 4% reduction in civilian workforce to be implemented through "detailed instructions" from OMB).[2]

**3**. The Civil Service Reform Act (CSRA) "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). Under the CSRA, most civilian employees can appeal major adverse actions to the Merit Systems Protection Board (MSPB). 5 U.S.C. §§ 7512, 7513(d), 7701. Employees subject to RIFs may also pursue a MSPB challenges, *see* 5 C.F.R. § 351.901, and seek relief including reinstatement with

---

[2] This order contemplated a large-scale "reduction" in the workforce, 58 Fed. Reg. 8515, which was implemented through a combination of RIFs and other means, National Performance Review, *Serving the American Public: Best Practices in Downsizing* 28 (1997), https://perma.cc/7EA3-ZGSQ. The means used to reduce an agency's workforce does not alter the President's authority to direct a reduction.

backpay, 5 U.S.C. §§ 1204(a)(2), 7701(g). An employee aggrieved by a final decision of the MSPB may obtain judicial review in the Federal Circuit. *Id.* § 7703.

Additionally, the Federal Service Labor–Management Relations Statute (FSLMRS) governs labor relations between the Executive Branch and its employees. *See* 5 U.S.C. §§ 7101-7135; *AFGE v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019). The Federal Labor Relations Authority (FLRA) is charged with adjudicating federal labor disputes. 5 U.S.C. § 7105(a)(2). Review of FLRA decisions is available in the courts of appeals. *Id.* § 7123(a).

### B.    Factual Background

**1. a.** In February, the President issued an executive order directing "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025), Add.118, § 3(c). The order sets priorities for how agencies carry out RIFs and categorically exempts "functions related to public safety, immigration enforcement, or law enforcement." *Id.*

The Executive Order further provides that, by March 13, 2025, "Agency Heads shall submit to" OMB "a report that identifies any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities," and that "discuss[es] whether the agency or any of its subcomponents should be eliminated or consolidated." Add.118, § 3(e). The Executive Order emphasizes that agency heads need not consider reductions for "any position they deem necessary to meet national

security, homeland security, or public safety responsibilities," Add.118, § 4(b), and that the Order "shall be implemented consistent with applicable law and subject to the availability of appropriations." Add.119, § 5(b).

**b.** Two weeks later, OPM and OMB jointly issued a guidance Memorandum to agencies. Add.121-27. The Memorandum explained that agencies should submit Agency RIF and Reorganization Plans that "seek to achieve" (1) "[b]etter service for the American people"; (2) "[i]ncreased productivity; (3) "[a] significant reduction in the number of full-time … positions by eliminating positions that are not required"; (4) a "reduced real property footprint"; and (5) a "[r]educed budget topline." Add.121-22. OPM and OMB cautioned agencies to review "their statutory authority and ensure that their plans and actions are consistent with such authority." Add.122.

The Memorandum explained that agencies should submit Plans in two phases to OMB and OPM "for review and approval." Add.123-24. The initial Plans were to be submitted by March 13, 2025, and "focus[ed] on initial agency cuts and reductions." Add.123. The second-phase Plans, to be submitted by April 14, 2025, were to "outline a positive vision for more productive, efficient agency operations going forward" to be implemented by the end of the fiscal year. Add.124.

The Plans do not themselves implement any RIFs, but instead describe RIFs that an agency intends to undertake. Add.124-25. Agencies must then follow an established process to actually reduce their workforce, including providing 30- or 60- days' notice, Add.127. *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351 Subpart H.

2.  Plaintiffs are unions, advocacy organizations, and local governments. Add.13-20.  Eleven weeks after the President issued the Executive Order, they sued the President, OPM, OMB, USDS, and twenty-one federal agencies—including every Cabinet-level agency except the Department of Education.  Add.20-25.  Plaintiffs alleged the President transgressed the separation of powers by directing agencies to prepare for RIFs, *see* Add.98-100; that OMB and OPM usurped other agencies' statutory authority by providing related guidance as the President directed, *see* Add.100-08; and that notice-and-comment rulemaking was required for that interagency guidance, *see* Add.105-06.

**3.**  Plaintiffs moved for a "temporary restraining order," Add.148-98, which the district court granted, Add.406.  Additionally, the district court ordered the government to produce:

> (1) the versions of all defendant agency [Plans] submitted to OMB and OPM, (2) the versions of all defendant agency [Plans] approved by OMB and OPM, (3) any agency applications for waivers of statutorily-mandated RIF notice periods, and (4) any responses by OMB or OPM to such waiver requests

Add.406.  Because the TRO was in fact an appealable injunction, the government sought relief from this Court; that motion remains pending.

The district court subsequently paused its production deadline while it considered the government's request for reconsideration or a protective order. Add.425-26, 586 n.20.

**4.** Plaintiffs then sought a preliminary injunction. Dkt.427-67. Recapitulating its analysis in granting the TRO, the district court again granted relief. The court held that at least some plaintiffs have standing, Add.689, and that it could exercise general federal-question jurisdiction notwithstanding the CSRA and the FSLMRS, Add.695, 698. The court then concluded that plaintiffs are likely to succeed on the merits. Add.713, 716. Invoking separation-of-powers principles, the court held that absent express authorization, the President cannot direct agencies to engage in large-scale RIFs and that OMB, OPM, and USDS are unlawfully usurping agencies' authority to make RIF determinations. Add.700-16.

The court prospectively enjoined about 20 agencies, OMB, OPM, and USDS, as well as "any other individuals acting under their authority or the authority of the President," from "taking any actions to implement or enforce sections 3(c) and 3(e) of Executive Order" or the Memorandum. Add.719-20. The court also ordered retrospective relief, though it stayed that relief pending appeal. Add.721. The court acknowledged that its order would "provide relief beyond the named plaintiffs" but deemed it "impracticable" to do otherwise. Add.719. The district court denied the government's motion to stay its grant of prospective relief. Add.721.

## ARGUMENT

The government is entitled to a stay because it is likely to succeed on the merits, it will suffer irreparable harm absent a stay, and the balance of the equities and the public interest favor a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

**I.    This Court should stay the grant of injunctive relief.**

    **A.    The government is likely to succeed on the merits.**

        **1.    Plaintiffs' claims are not justiciable in district court.**

    **a.** First, the district court lacks subject-matter jurisdiction to adjudicate challenges to agencies' employment decisions. Instead, Congress has "established a comprehensive system" as the "exclusive means" for reviewing such matters. *Elgin v. Department of Treasury*, 567 U.S. 1, 5, 8 (2012) (quotation marks omitted). The CSRA, together with the FSLMRS, "creates an integrated scheme of administrative and judicial review, wherein the Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims." *AFGE v. Secretary of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (cleaned up). Congress allowed certain individual federal employees to challenge agency personnel decisions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, albeit limited to the claims and remedies provided by Congress. *See AFGE. v. Trump*, 929 F.3d at 757.

    The court acknowledged this comprehensive scheme, Add.691-92, but erroneously concluded that plaintiffs' claims fall outside it. Plaintiffs seek to preemptively challenge agencies' RIF decisions. Add.57-72. But federal employees who believe a RIF has violated a statute or regulation may seek redress only through the MSPB. *See* 5 U.S.C. § 7701(a); 5 C.F.R. § 351.901; *see also Alder v. TVA*, 43 F. App'x 952, 956 (6th Cir. 2002) ("a challenge to [a] reduction-in-force decision" is "a

fundamental employment claim subject to MSPB review"). Plaintiffs may not evade this scheme by bringing claims as unions asserting harms to their individual members or asserting a loss of membership dues. Otherwise, any unionized employee "could circumvent the CSRA's strictures." *See Air Force*, 716 F.3d at 639. Moreover, the FSLMRS "establishes a comprehensive scheme to deal with labor relations in federal employment," which channels adjudication to the FLRA followed by direct review in the courts of appeals. *Id.* at 636. Under the FSLMRS, unions may file a grievance under preexisting collective bargaining agreements "concerning any matter relating to the employment of any employee," "the effect or interpretation, or a claim of breach, of a collective bargaining agreement," or "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. §§ 7103(a)(9), 7121(a)(1).

These comprehensive provisions foreclose the union plaintiffs' attempt to raise their labor dispute in district court. And for the same reason, the claims cannot be brought by the non-union plaintiffs who assert downstream harms from agencies' employment decisions. When a comprehensive remedial scheme permits review at the behest of some types of plaintiffs but not others, the proper inference is that the excluded parties cannot bring claims at all. In *Block v. Community Nutrition Institute*, the Supreme Court considered a statute that permitted dairy handlers—but not consumers—to obtain review of "market orders." 467 U.S. 340, 346 (1984). When consumers sought review, the Supreme Court explained that "[i]n a complex scheme

9

of this type, the omission of such a provision [permitting consumers to participate] is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process." *Id.* at 347.

These principles apply to the CSRA. In *Fausto*, the Supreme Court applied *Block* to conclude that federal employees who lack CSRA appeal rights "should not be able to demand judicial review for the type of personnel action covered by that [law]." 484 U.S. at 448. As the Court explained, "the absence of provision for these employees to obtain judicial review" is a "manifestation of a considered congressional judgment that they should not have statutory entitlement to review." *Id.* at 448-49. And more recently, after a district court enjoined the termination of various federal employees in litigation brought by state governments, the Fourth Circuit entered a stay pending appeal because the government was "likely to succeed in showing the district court lacked jurisdiction over Plaintiffs' claims." *Maryland v. USDA*, No. 25-1248, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025).

Thus, to the extent plaintiffs here cannot invoke the specialized review schemes, that does not entitle them to circumvent the limits on those schemes and sue in district court. *See Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). Nor can they evade the CSRA by agglomerating many individual employment actions into one complaint, or by challenging an Executive Order and seeking to raise constitutional claims, *see Elgin*, 567 U.S. at 17.

**b.** Further, plaintiffs do not identify final agency action reviewable under the APA. The APA applies only to final agency action and excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704. To be final, an agency action (1) "must mark the 'consummation' of the agency's decisionmaking process," and (2) determine "rights or obligations" or have "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The Memorandum satisfies neither criterion. The Memorandum is an internal document that simply begins an iterative process between agencies and OPM and OMB. It contemplates the creation of planning documents, which themselves may lead to final agency actions, but the Memorandum itself is far afield from any action that has legal consequences and directly affects plaintiffs. The APA does not permit this type of "wholesale" attack on an agency program; rather, plaintiffs must point to "some particular 'agency action' that causes [them] harm," and they have failed to do so. *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

**c.** Nor can plaintiffs proceed on an *ultra vires* claim outside of the APA. *Ultra vires* claims require a showing that government officials act "without any authority whatever." *Kalispel Tribe of Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 691 (9th Cir. 2021). But both the Executive Order and the Memorandum expressly require agencies to act in accordance with statutory authority and relevant appropriations. Add.119, § 5(b); 122.

11

*City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239-40 (9th Cir. 2018),

does not establish otherwise.  Although the Court in that case declined to give effect

to an executive order's savings clause, that holding was based on the Court's

conclusion that the order had *no* legitimate applications, and so giving effect to the

savings clause would effectively negate the order.  *Id.*  That is not the case here, *see*

*infra* pp. 12-16, so plaintiffs' challenge fails.  *See Building & Const. Trades Dep't v.*

*Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).

### 2. Plaintiffs' challenges to the Executive Order are meritless.

**a.**  The district court erred in concluding that the President acted *ultra vires* in

directing agencies to take steps to reduce the size of their workforce.  Congress

expressly authorized agencies to conduct RIFs, 5 U.S.C. § 3502, as the district court

recognized, Add.709.  And the President may undoubtedly tell agencies to examine

their statutory authorities and take steps to implement his policy priorities.  Indeed,

the President's "'ongoing supervision and control' of executive officials legitimizes

the power that they exert in his or her name." *Duenas v. Garland*, 78 F.4th 1069, 1072

(9th Cir. 2023).  As the Supreme Court has recognized, "[i]t clearly is within the

President's constitutional and statutory authority to prescribe the manner in which"

his subordinates conduct their business, and "this mandate of office must include the

authority to prescribe reorganizations and reductions in force." *Nixon v. Fitzgerald*,

457 U.S. 731, 757 (1982).[3]  The President did not contravene the separation of powers in directing agencies to carry out RIFs consistent with applicable law.

The district court acknowledged that agencies have statutory authority to conduct RIFs, Add.709, and that the President may give policy direction to agencies, Add.673.  The court's conclusion that the President nevertheless lacked authority to issue the Executive Order rests on several mistaken premises.

Foremost, the court pointed to the expiration of the most recent Reorganization Act to conclude that absent such authority, the President cannot "reorganize" an agency.  Add.701-04.  But reorganization authority is a red herring.  "Administrative agencies," of course, "are creatures of statute."  *NFIB v. OSHA*, 595 U.S. 109, 117 (2022).  But absent congressional specification, an agency's priorities and structure are details that Congress left to the Executive Branch to implement.  Congress has empowered each department head to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business."  5 U.S.C. § 301.  This general housekeeping authority allows agencies to structure themselves as they see fit and to employ such staff as they require, subject to other statutory constraints.  Examples of

---

[3] The district court's assertion, Add.705, that *Fitzgerald* relied on the President's commander-in-chief powers misapprehends that decision.  The statutory authority cited in *Fitzgerald* (now codified at 10 U.S.C. § 9013(g)) was the Air Force's general housekeeping provision, and nothing about the Supreme Court's analysis turned on the President's military authority or whether he was directing a military or civilian agency.  Indeed, Ernest Fitzgerald was a civilian employee.

non-statutory alterations to agency structures are legion. *See, e.g.*, 75 Fed. Reg. 70122 (Nov. 17, 2010) (establishing Office of Tribal Justice within DOJ); 71 Fed. Reg. 422234 (July 25, 2006) (eliminating and consolidating certain offices within DOL). That general grant of authority is not an unusual arrangement: implementing statutes by filling in such details lies at the core of the executive power. *See Bowsher v. Synar*, 478 U.S. 714, 732-33 (1986).

That does not mean that prior Presidents and Congresses "did not properly understand the separation of powers" in seeking and granting reorganization authority. *Contra* Add.675. That legislation may not be required does not prohibit Congress from legislating. And because *some* changes to agency structure might require statutory changes, such as the elimination of statutorily required functions, Presidents benefit from having fast-track procedures for such legislation. But not all changes require an Act of Congress.

The district court underscored the error of its analysis by holding that "even if agencies consider all their organic statutory mandates, the executive branch still cannot reorganize at this scale without authority from Congress." Add.712. By definition, if agencies comply with all relevant statutes, they are following the law. Federal law, in any event, expressly authorizes agencies to undertake RIFs, and does not impose a numerical cap—let alone an amorphous "large scale" limitation. *See* 5 U.S.C. § 3502. Indeed, § 3502 expressly contemplates that some RIFs will affect a "significant number of employees." 5 U.S.C. § 3502(d)(1)(B). In such a case, the

14

agency must provide advance notice to the relevant State or its designee, 5 U.S.C.

§ 3502(d)(1)(B), (d)(3)(A)(i), under a law that allows States to use emergency funds

respond to, inter alia, "mass layoffs," Workforce Investment Act of 1998, Pub. L. No.

105-220, § 134(a)(2)(A), 112 Stat. 936, 990.[4]  A "large" RIF that comports with the

agency's statutory structure and function is just as lawful as a "small" one; the district

court's created its contrary limitation out of whole cloth.

For similar reasons, the court erred in concluding that in directing agencies to

undertake RIFs consistent with federal law, Add.119, § 5(b), the Executive Order

somehow requires agencies to undertake "reorganization[s]" of agency structures that

are contrary to law.  Add.711-13.  The Executive Order does not direct any particular

reorganization of any agency.  And it certainly does not foreclose the possibility of

seeking any statutory amendment that an agency concludes that is appropriate to best

execute its mission.  But even if the Executive Order required specific RIFs, as the

district court assumed, *e.g.*, Add.711-12, the President would have the power to issue

that directive too, *see Fitzgerald*, 457 U.S. at 757.

Of course, if an agency were to undertake specific actions in implementing a

RIF that contravened a statutory command—and thus contravene the Executive

Order, which directs agencies to follow applicable law—a proper plaintiff may be able

to challenge that action in the appropriate forum.  But plaintiffs bring a facial

---

[4] The relevant provision is now codified at 29 U.S.C. § 3174(a)(2)(A).
*See* Pub. L. No. 113-128, Title V, § 513(a), 128 Stat. 1425, 1722.

challenge. Even if an individual application of those directives could be invalid as the district court suggests, Add.712, that lapse would not render the Executive Order and Memorandum invalid on their face. *See Bondi v. Vanderstok*, 145 S. Ct. 857, 865-66 (2025). That certain offices may be reduced does not mean that agencies' functions cannot be performed. There are any number of changes that agencies may effectuate without congressional action, such as creating or eliminating field offices or centralizing dispersing IT staff. *E.g.*, Dkt. 37-21 at 20. The district court's unwarranted speculation that agencies may deviate from the Executive Order's directives and exceed statutory bounds in reducing their workforces cannot support a narrow injunction, let alone the sweeping one here.

**b.** Plaintiffs' argument for why the Executive Order is unlawful rests on the remarkable assertion that the President cannot direct agencies to undertake RIFs consistent with applicable law absent express statutory authority. Add.578-79. But the Constitution undoubtedly allows the President to give policy direction to executive agencies, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021); *see generally* Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001), including with respect to RIFs, *see Fitzgerald*, 457 U.S. at 757. The President's power to supervise agencies lies at the heart of his executive authority. Our constitutional structure presumes that the President is "responsible for the actions of the Executive Branch," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010) (cleaned up). No statute need authorize him to convey his policy choices to agencies.

16

### 3. Plaintiffs' challenges to the Memorandum are meritless.

**a.** The court's interpretation of the Memorandum rests on the mistaken premise that OMB, OPM, and USDS have stolen statutory power from other agencies. In particular, the court erroneously reasoned that OMB, OPM, and USDS are ordering agencies to engage in RIFs. Add.708-09.

It is common ground that Congress empowered agencies to hire and fire their own employees. 5 U.S.C. § 3101. In exercising that authority, however, agencies properly take direction from the President. And the President may ask OMB, OPM, and his advisors in USDS to review agencies' personnel plans and provide guidance, which is all that occurred here. That sort of interagency dialogue happens every day in the federal government and is not nefarious; it is how the system is supposed to work.

Plaintiffs' reliance on the Memorandum's statement that agencies should submit Plans to OMB and OPM for "review and approval," Add.183-84, misapprehends the role of OMB and OPM. Individual agencies (not OPM and OMB) are in charge of crafting and implementing their Plans and of making decisions regarding RIFs. The Memorandum offers broad guidelines about the information to include in the Plans—not what agencies should do. Underscoring this, the Executive Order explains that it shall not "be construed to impair or otherwise affect … the authority granted by law to an executive department, agency, or the head thereof."

Add.119, § 5(a)(i). And the Memorandum makes clear that agencies should only undertake actions that are consistent with their statutory authority. Add.122. Thus, agencies are responsible for developing and implementing RIFs. *See also* Add.247.

Plaintiffs' allegations do not establish otherwise. Plaintiffs do not claim, for example, that OPM is issuing RIF notices. Instead, they point to the President's decision to set broad policy priorities, which he obviously can do, and to interagency consultation. *E.g.*, Add.41-47. Those actions violate no statute. And, even assuming that the President had authorized OPM to block RIFs by withholding "approval," that delegation still would not allow OPM to affirmatively *force* agencies to conduct RIFs, as plaintiffs erroneously allege, Add.102-03. Indeed, OPM has long exercised unchallenged authority to "examine agency's preparations for [a RIF] at any stage" and to "require appropriate corrective action" if it finds a violation of the RIF regulations that OPM itself promulgates. 5 C.F.R. § 351.205.

**b.** Finally, notice-and-comment rulemaking was not required to issue the Memorandum. It is not final agency action. *See supra* p. 11. Rather, it is interagency guidance, which does not determine any legal rights or have the force and effect of law. Because it is not a legislative rule, notice-and-comment requirements do not apply. *See Gill v. DOJ*, 913 F.3d 1179, 1186 (9th Cir. 2019).

## C. The other stay factors strongly favor the government.

**1.** The injunction causes irreparable harm. The President has determined that agencies should operate more efficiently and has directed agencies to undertake steps

to optimize their workforces. The court's order prevents agencies from taking steps to implement this policy priority and determine how best to organize themselves, even though the government has "traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83. Multiple RIFs were set to be noticed within the next month, and dozens were set to occur during that period, Add.679. The injunction halts those processes in their tracks with implications across the Executive Branch.

The district court requires agencies to retain employees they would otherwise have let go in a reduction in force; the government will never be able to recover the cost of those salaries and benefits, even if the court's order is vacated. *See Maryland*, 2025 WL 1073657, at *1. The nominal $10 bond the district court imposed, Add.722, is plainly inadequate to address that harm. The injunction costs the government millions of dollars each week; the bond will not cover even one hour's wages for the lowest-paid federal employee. Finally, the district court's exercise of jurisdiction, despite the existence of comprehensive remedial scheme, has a "disruptive effect on the administrative processes established by the government to handle cases such as these." *Garcia v. United States*, 680 F.2d 29, 32 (5th Cir. 1982).

On the other side of the ledger, plaintiffs have not established irreparable injury warranting extraordinary relief. The district court primarily found irreparable harm based on harms to employees who may be separated. But in the ordinary course, employment disputes brought by proper plaintiffs—employees—rarely justify

19

preliminary relief because there are procedures by which a terminated employee may obtain back pay. *See, e.g.*, *Sampson*, 415 U.S. at 92 & n.68. And, even assuming that plaintiffs established irreparable injury, any such injury is outweighed by the public interest and the Executive Branch's interest in the effective and efficient management of the federal workforce.

**2.** Any injunctive relief "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Under settled principles of equity, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994). Here, however, the district court made no effort to tailor relief to those of plaintiffs' members who can show they are likely to suffer an Article III injury absent equitable relief. At a minimum, its order should be so limited. For it is plaintiffs burden to justify the scope of the injunctive relief sought and identify those parties that actually face imminent harm absent such relief. See *Arizona* v. *Biden*, 40 F.4th 375, 398 (6th Cir. 2022) (Sutton, C.J., concurring).

## II. This Court should stay the district court's discovery order.

This Court commonly grants stays pending disposition of a mandamus petition, including those challenging to discovery orders. *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1187 (9th Cir. 2019) (per curiam). A stay is equally appropriate here.

### A.     The district court failed to justify its order.

**1.** The deliberative process privilege protects deliberations by shielding from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citation omitted).  "[I]t would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." *EPA v. Mink*, 410 U.S. 73, 87 (1973).

The qualified privilege may be overcome if a litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Communc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam).  In assessing a claim under the privilege, a court must consider "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  *Id.*

Here, the court entirely failed to consider the deliberative nature of the Plans. As the government explained, "the [Plans] are deliberative agency planning documents that discuss a number of steps the agency plans to take t[o] … improve the agency's efficiency, as well as to focus on statutorily required functions activities that directly serve the public."  Add.254; *see also* Add.421.  Without addressing those

21

concerns or engaging in any balancing analysis, the court simply declared that "good cause" was shown and ordered disclosure. Add.406.

That analysis is plainly inadequate. In *Karnoski*, this Court issued mandamus because the district court did not perform a sufficiently "granular" balancing analysis before holding that the plaintiffs in that case had overcome the deliberative-process privilege. 926 F.3d at 1206. Here, the district court conducted no analysis at all. That error is only compounded by the facial nature of plaintiffs' challenge, which does not depend on any specific agency actions to implement the Executive Order or Memorandum and to which discovery is therefore irrelevant.

### B.   Public disclosure of sensitive documents would irreparably harm the government.

**1.** Disclosure of confidential information is irreversible. Because a party is likely to suffer irreparable harm if required to disclose privileged materials, courts recognize that mandamus is appropriate to review such disclosure orders. *See, e.g.*, *In re von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987) (recognizing that "appeal after judgment" is "inadequate at best" to address compelled disclosure of privileged material). The need for interlocutory review is heightened here given "[t]he unique features of the … deliberative process privilege." *Karnoski*, 926 F.3d at 1203.

Here, disclosure "would seriously undermine agency operations" across the Executive Branch. Add.421. As an OMB declarant explains, the Plans contain "highly sensitive information," which may include labor-negotiation strategies,

nascent regulatory plans, and intended approaches for engaging with Congress. *Id.* Releasing such information, before agencies have reached any final decisions, would put agencies at a significant disadvantage when dealing with other stakeholders. Public disclosure might make recruitment or employee retention more difficult. *Id.* For example, a potential new hire may be unwilling to join a component if she knows that an agency had considered eliminating it, even if the agency has confirmed that it wants to keep the office open. Nearly all of the panoply of reasons for shielding pre-decisional, deliberative materials from public scrutinyapply to the Plans at issue here.

**2.** At minimum, this Court should require the district court to enter a protective order. Such an order, which the government has sought, Add.409-19, would at least ameliorate the harm the government would face from public disclosure, though it would do little to temper the discovery order's unwarranted intrusion into the government's privileged deliberations. The district court has reviewed several Plans *in camera*, Add.615-19, and could lift the administrative stay on the production order at any time.

23

## CONCLUSION

The Court should stay the district court's orders.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
  *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

 */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *maxwell.baldi@usdoj.gov*

May 2025

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(d) and 32-3 because it contains 5,513 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI