Nos. 25-3030, 25-3034, 25-3293

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Defendants-Appellants.*

(full caption on inside cover)

On Appeal from the United States District Court
for the Northern District of California

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Petitioner.*

(full caption on inside cover)

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

**REPLY IN SUPPORT OF SUPPLEMENTAL EMERGENCY MOTION
FOR STAY PENDING APPEAL/PETITION FOR WRIT OF MANDAMUS**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
  *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

No. 25-3030, 25-3293

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 521; SEIU LOCAL 1000; SEIU LOCAL 1021; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity as the actual head of the Department of Government Efficiency*; AMY GLEASON, *in her official capacity as the titular Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; PEACE CORPS; ALLISON GREENE, *in her official capacity as Chief Executive Officer of the Peace Corps*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and FRANK BISIGNANO, *in his official capacity as Commissioner of the U.S. Social Security Administration*,

*Defendants-Appellants*.

No. 25-3034

In re DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*,

DONALD J. TRUMP, *in his official capacity as President of the United States*; UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as the Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and FRANK BISIGNANO, *in his official capacity as Commissioner of the U.S. Social Security Administration*,

*Petitioners-Defendants,*

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent,*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Real Parties in Interest-Plaintiffs.*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ................................................................................................................ 2

THIS COURT SHOULD GRANT A STAY. .................................................................. 2

    A.    Plaintiffs' claims are not justiciable in district court ................................... 2

    B.    Plaintiffs' challenges to the Executive Order and Memorandum fail ....... 5

    C.    The other stay factors favor the government. ........................................... 10

CONCLUSION .......................................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs do not seriously dispute that agencies have statutory authority to undertake RIFs. Rather, in defending this sweeping injunction, plaintiffs insist that no statute grants the President the authority to broadly direct executive agencies to prepare RIFs. Even assuming that premise, it is a basic constitutional principle that because "[t]he entire 'executive Power' belongs to the President alone," he must have "the power of … overseein[g] and controlling those who execute the laws" on his behalf. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). As the Supreme Court has recognized, "[i]t clearly is within the President's constitutional and statutory authority to prescribe the manner in which" his subordinates conduct their business, and "this mandate of office must include the authority to prescribe reorganizations and reductions in force." *Nixon v. Fitzgerald*, 457 U.S. 731, 757 (1982). Thus, the President acted well within his constitutional prerogative in telling agencies to examine their statutory authorities and take steps to implement his policy priority to reduce the size of the federal workforce, consistent with applicable law and subject to the guidance of OPM and OMB. Plaintiffs' speculation that agencies will disregard statutory restrictions in undertaking RIFs does not rehabilitate the district court's sweeping injunction.

Plaintiffs also fail to show that their claims belong in district court. Congress set up an exclusive administrative scheme to resolve federal employment disputes, and plaintiffs lack a viable APA or *ultra vires* cause of action.

Nor can plaintiffs meaningfully dispute the harms caused by the district court's order, which has disabled a huge swath of the Executive Branch from managing the size of their workforce consistent with the President's priorities and their own internal planning. To forestall the harm caused by that order and the related order to produce privileged documents, this Court should grant a stay.[1]

## ARGUMENT

## THIS COURT SHOULD GRANT A STAY.

### A. Plaintiffs' claims are not justiciable in district court.

**1.** Plaintiffs fail to establish subject-matter jurisdiction. The union plaintiffs insist they are not challenging "specific RIFs," but rather the Executive Order and Memorandum directing agencies to take steps to implement RIFs. Supp.Opp.27. But Congress would not have enacted the "elaborate framework" of the CSRA and FSLMRS for reviewing federal-employee terminations and labor disputes, *Elgin v. Department of the Treasury*, 567 U.S. 1, 11 (2012) (quotation marks omitted), while allowing an end-run around those processes in the form of a district court action preemptively challenging preparations for RIFs across the Executive Branch. That plaintiffs invoke the separation of powers (Supp.Opp.28) does not change the basic thrust of their suit. *See id.* at 22-23 (CSRA channels review of constitutional claims);

---

[1] Plaintiffs do not address the government's request for a stay of the production order in their opposition. The government, therefore, rests its argument for relief from that order on its earlier filings.

2

*AFGE v. Trump*, 929 F.3d 748, 759 (D.C. Cir. 2019) (district court lacked subject-matter jurisdiction over unions' claims alleging Executive Order was unconstitutional and *ultra vires*).

To the extent the MSPB and FLRA cannot hear claims by the non-profits, local governments, or non-federal-union plaintiffs (Supp.Opp.24-26), the absence of jurisdiction confirms that they are not proper parties to bring those claims at all, not that they may file suit in district court outside the CSRA framework. *See United States v. Fausto*, 484 U.S. 439, 449 (1988). "[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies," that precludes jurisdiction; accordingly, even where "the CSRA provides no relief," it "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (citation omitted); *see Block v. Community Nutrition Inst.*, 467 U.S. 340, 346-47 (1984). Just as with the scheme in *Block*, *see* Supp.Stay.Mot.9-10, it would turn that comprehensive scheme "upside down" to allow third parties who are at most indirectly affected by agencies' personnel actions to challenge those actions outside of the CSRA/FSLMRS processes. *Fausto*, 484 U.S. at 449. In many cases falling within the core of the CSRA framework, it would not be difficult to find third parties with some indirect interest in the matter; allowing any such case to be diverted into district court would blatantly frustrate Congress's statutory design.

**2.** Plaintiffs also lack a viable APA or *ultra vires* cause of action. Plaintiffs do not dispute that the Executive Order is not subject to APA review. Appeal.Opp.19

n.25. And they fail to meaningfully engage with the Memorandum in asserting that it finally determines rights or obligations or imposes legal consequences. Supp.Opp.21. The Memorandum provides a framework for preparing and reviewing agency plans and merely marks the beginning of interagency dialogue. Supp.Stay.Mot.11. Plaintiffs assume that agencies will eliminate all non-statutorily mandated functions, will reduce their workforces to "shutdown-level staffing," and will "transfe[r] functions and offices between agencies" without congressional authorization. Supp.Opp.7, 11. But plaintiffs' speculation about what agencies will do at the conclusion of an iterative process—based on their interpretation of factors to guide that process—does not transform the Memorandum into reviewable final agency action. Plaintiffs fare no better in asserting that any approval by OMB and OPM of the Plans is a final agency action, because individual agencies must carry out their plans and only those discrete actions have legal force and effect.

    Nor do plaintiffs rebut the government's showing (Supp.Stay.Mot.11-12) that they lack a viable *ultra vires* claim where the Executive Order and Memorandum contain express language emphasizing the need to comply with applicable law. Plaintiffs refer to the Executive Order's "more specific provisions" (Supp.Opp.18) but identify no language purporting to direct agencies to take any actions inconsistent with law.

4

### B. Plaintiffs' challenges to the Executive Order and Memorandum fail.

**1.** Plaintiffs offer only token resistance to the well-settled understanding that agencies have statutory authority to conduct reductions in force. Supp.Opp.16. Plaintiffs suggest that 5 U.S.C. § 3502 "merely requires agencies to use a particular order of retention when conducting RIFs," Supp.Opp.15, but in prescribing certain requirements when agencies undertake RIFs, that provision necessarily recognizes agencies' authority to abolish positions. Moreover, as plaintiffs acknowledge, agencies indisputably have statutory authority to hire and fire staff. 5 U.S.C. § 3101.

Instead, plaintiffs posit muddled and arbitrary limitations on agencies' RIF authority, seemingly gerrymandered to cover this case. They insist, for example, that agencies' authority does not apply to "large scale" RIFs. Supp.Opp.11. But no statute limits the size of RIFs. Indeed, § 3502 expressly contemplates that some RIFs will affect a "significant number of employees." 5 U.S.C. § 3502(d)(1)(B); *see* Supp.Stay.Mot.15. A "large" RIF that comports with the agency's statutory structure and function is just as lawful as a "small" one, and plaintiffs may not impose an atextual and amorphous cap of their own devising. These recognized authorities foreclose plaintiffs' challenge to the Executive Order, which permissibly directs agencies to "undertake preparations" for RIFs consistent with their statutory authority. Supp.Add.118.

5

That Congress has not enacted a new reorganization act (Supp.Opp.12) is beside the point. Unless a "reorganization" transgresses some other statutory limitation, an agency may rely on its housekeeping authority to manage its structure. Congress has empowered each department head to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business." 5 U.S.C. § 301. This general housekeeping statute dates to 1789, H.R. Rep. No. 85-1461, at 1 (1958), and other agencies have their own specific housekeeping provisions, *e.g.*, 15 U.S.C. § 634 (SBA). Together, they provide the authority for agencies to govern their employees, *e.g.*, *Authority to Prescribe Regulations*, 28 Op. O.L.C. 102 (2004), and structure their own affairs, *e.g.*, *Appointment of Interim Officers*, 2 Op. O.L.C. 405 (1978). Plaintiffs insist that housekeeping authority is limited and authorizes only "rules of agency organization[,] procedure[,] or practice' as opposed to 'substantive rules." Supp.Opp.17 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979)). But that proposition does not help them. Among other things, it is hard to see how an agency's reorganization (within statutory bounds) could be anything other than a matter of "agency organization." 5 U.S.C. § 301; *see Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980).

Reading the agency housekeeping authority broadly does not negate the reorganization acts. *Contra* Supp.Opp.12 n.23. Because some changes to agency structure might require statutory changes, Presidents benefit from having fast-track procedures for such legislation. In proposing the 1949 Reorganization Act, President

6

Truman explained that he had "made program adjustments" "[o]n matters not requiring legislation" and was now requesting additional authority to effect other changes.[2] H.R. Doc. No. 81-42, at 2 (1949). The history of reorganization acts is therefore fully consistent with the Executive Branch making organizational and personnel changes to agencies without an Act of Congress. As discussed, the Executive Order does not direct any reorganization or other action that would conflict with agencies' statutory mandates. And despite suing more than 20 agencies, plaintiffs have not shown any action that would violate any organic statute. Plaintiffs make much (Supp.Opp.7) of the Executive Order's directive to prioritize for RIFs "all agency initiatives, components, or operations that [the] Administration suspends or closes." But agency heads undoubtedly have the prerogative to drop initiatives or operations to pursue other priorities, the President may permissibly give policy direction to agencies to do so, and a component that has a "lack of work" left to do is a natural candidate for a RIF, 5 C.F.R. § 351.201(a)(2).

For these reasons, there is no merit to plaintiffs' contention that the President has unlawfully directed agencies to "exceed, defy, or abuse their own statutory authority." Supp.Opp.14. The President directed agencies to propose RIFs consistent with their statutory authority. To the extent plaintiffs continue to defend

---

[2] The authority conferred by 1949 Reorganization Act was extended intermittently until it finally lapsed in 1984. *See* H.R. Rep. No. 95-105, at 2 (1977); H.R. Rep. No. 98-128(I), at 2 (1983).

the district court's remarkable assertion that the challenged actions are unlawful *because* agencies are undertaking RIFs "at the President's direction," Supp.App708 (emphasis omitted), that is likewise meritless. The Constitution undoubtedly allows the President to give policy direction to executive agencies, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021), including with respect to RIFs, as the Supreme Court has specifically recognized, *see Fitzgerald*, 457 U.S. at 757.[3] Nor do agencies unlawfully cede any decision-making power to the President in following his policy directives. Our constitutional structure presumes that the President is "responsible for the actions of the Executive Branch," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010) (cleaned up), and that the President's "'ongoing supervision and control' … legitimizes the power that" agencies exercise, *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) (quotations omitted). Plaintiffs miss the point in attempting to cabin these Article II principles to the President's removal power. Supp.Opp.13 n.25. The President's removal power is not separate from the power to supervise; it *ensures* presidential control over executive agencies. *See Selia Law*, 591 U.S. at 213-14.

    **2.** Plaintiffs' arguments about the Memorandum likewise fail. Plaintiffs assert (Supp.Opp.20) that OPM and OMB acted without statutory authority in issuing the Memorandum. But OPM has express statutory authority to "prescribe regulations for the release of competing employees in a reduction in force," 5 U.S.C. § 3502(a),

---

[3] Like the district court, plaintiffs err (Supp.Opp.18) in supposing that *Fitzgerald* is a case about the President's commander-in-chief powers. *See* Supp.Stay.Mot.13 n.3.

and other related authorities with respect to aiding the President in personnel management, *e.g.*, *id.* §§ 1301, 1302(b). And under a longstanding regulation, OPM may "establish further guidance and instructions for the planning, preparation, conduct, and review of [RIFs]," "may examine an agency's preparations for [RIFs] at any stage," and "may require appropriate corrective action" if an agency's RIF plans do not comply with OPM regulations. 5 C.F.R. § 351.205. These regulations "mandate a continuing exchange between each agency and the OPM." *NTEU v. Devine*, 733 F.2d 114, 120 (D.C. Cir. 1984). As for OMB, it has express statutory authority to "[f]acilitate actions by the Congress and the executive branch to improve the management of Federal Government operations and to remove impediments to effective administration." 31 U.S.C. § 503(b)(4); *see also* 5 C.F.R. § 1310.1 (providing OMB may "issu[e] policy guidelines to Federal agencies to promote efficiency and uniformity in Government activities"). In providing guidance and instructions to agencies as they implement the President's Executive Order, OPM and OMB acted comfortably within these authorities and the processes established by the Executive Order.

Nor do plaintiffs establish that OPM and OMB have unlawfully "assumed for themselves agencies' decision-making authority." Stay.Opp.19. Plaintiffs assert that the Memorandum uses "mandatory language." *Id.* at 20. But some of the language plaintiffs identify as "mandatory" is simply the Memorandum's guidance as to what agencies "should focus on" as they implement the President's policy directive and the

9

Memorandum's instructions for submitting Plans to OPM and OMB for coordinated guidance, consistent with OPM and OMB's statutory and regulatory functions. *See* Supp.Opp. 8. And to the extent the Memorandum does direct action—*i.e.*, the agencies' submission of Plans for review and approval—plaintiffs do not show that the directive falls outside OPM's and OMB's statutory and regulatory authority, *e.g.*, 5 C.F.R. § 351.205. OPM and OMB's review of agency RIF *plans* does not mean that those offices would compel agencies to conduct or refrain from any particular RIFs. Thus, even if they did reject certain Plans, OPM and OMB would not have exceeded their role in providing direction and guidance to agencies as they implement the Executive Order. Nor would any veto power over an agency's Plan permit OMB or OPM to force an agency to separate anyone from federal service. The power to hire and fire would still rest with the agency, as Congress required, *see* 5 U.S.C. § 3101. Plaintiffs completely fail to grapple with this argument, and it sinks their case.

**C.  The other stay factors favor the government.**

"[T]he Government has traditionally been granted the widest latitude" in personnel matters and "the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (citation omitted). The government's interest is gravely hindered by the injunction, which bars a huge swath of the Executive Branch from acting to manage the size of its workforce—delaying and disrupting agencies' plans, imposing fiscal and administrative harms, and sowing confusion over agencies' latitude to engage in a

wide variety of internal planning and organizational activities. The broad sweep of the order potentially impedes even ordinary human-resources functions.

Plaintiffs invoke injuries to employees who may be terminated (Supp.Opp.28-29), but, in the ordinary course, federal employment disputes brought by employees rarely justify preliminary relief because affected employees may pursue relief in an appropriate forum and obtain back pay. *See Sampson*, 415 U.S. at 92 & n.68. And plaintiffs' speculation about downstream harms to non-employees from agencies' plans, such as the possibility that certain facilities may be closed or federal services may be delayed (Supp.Opp.29-30), does not establish imminent, irreparable injury. At a minimum, any such injuries—to employees or to others— are outweighed by the public interest and the Executive Branch interest in the effective and efficient management of the federal workforce. Plaintiffs' theory of irreparable harm is a recipe for judicial micromanagement of any significant federal personnel action.

The order also sweeps far too broadly. Relief must be limited to redressing specific plaintiffs' injuries. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018). The court acknowledged that its order would "provide relief beyond the named parties," but it claimed that "[t]o do otherwise is impracticable and unworkable." Supp.Add.719. But it is plaintiffs' burden to justify the scope of the injunctive relief sought and identify those parties that actually face imminent harm absent such relief. *See Arizona v. Biden*, 40 F.4th 375, 398 (6th Cir. 2022) (Sutton, C.J., concurring).

11

## CONCLUSION

The Court should grant a stay.

Respectfully submitted,

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
   *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

/s/ Maxwell A. Baldi
MAXWELL A. BALDI
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7513*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*
   *maxwell.baldi@usdoj.gov*

May 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(1)(d) and 32-3 because it contains 2,644 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI